Good morning. May it please the court, my name is Mara Goldman and I'll be arguing today on behalf of the appellant Mr. Andres Gomez-Gutierrez. I'd like to reserve two minutes for rebuttal. All right, counsel please be advised that the time showing is your total time remaining. I will try to keep my eye on the clock. All right. Thank you. Andres Gomez-Gutierrez was denied his constitutional right to a speedy trial because of what the district court correctly found to be the government's grossly negligent delay. The reason that this case needs to be reversed is because despite that finding, the district court failed to properly apply the test set forth in Doggett and in this court's decision in Shell about when prejudice should be presumed when there is a combination of a lengthy delay and governmental culpability. This court hasn't addressed this precise issue of a situation such as this where it's not just simple negligence, but a more aggravated form of negligence like the district court's finding here of gross negligence. However, the other circuits that have addressed this or analogous situations have found that prejudice should be presumed in shorter periods of time, such as  periods of time, such as this. Sotomayor, where was he during this period? He was in State custody. Yeah. So, counsel, if we agree with you that prejudice should have been presumed, how does that change the outcome? If prejudice is presumed, and I'm talking here about not just as the threshold, but the ultimate prejudice factor, then I don't need to go back to that. Oh, you're saying prejudice is presumed and deemed unrebutted? Correct. That's different. Correct. Okay. Yes. So I'm saying that at that point, the motion has to be granted. So tell me the case you're relying upon to support your argument that prejudice should not only be presumed for purposes of the initial analysis, but also deemed unrebutted. What's the strongest case you have to support that argument? Well, the Supreme Court case, of course, would be Doggett. And then in this court, we would have Schell and also Mendoza. And these are all cases Schell and Mendoza interpreting Doggett, which holds that there are going to be times when a defendant cannot demonstrate what the prejudice is and cannot prove the prejudice. Nonetheless, because of the government's culpability and because of the length of the delay, the court is going to just presume that prejudice exists in ways that can't be shown. And then in terms of the particular situation we have here... In this case, there were actual articulations of what the prejudice was. So that doesn't fit within the rubric you've just described if the defendant actually articulated the nature of the prejudice. Well, I think it's both. And I certainly don't think that the message of Doggett is that a defendant should be penalized for attempting to demonstrate actual prejudice. But if that case stands for the proposition that prejudice is presumed in those circumstances where it cannot be articulated, then why should we apply it to a case where the prejudice has been articulated? Well, I think that if the district court or this court agrees that prejudice has been successfully demonstrated, then right. The court doesn't have to proceed to the Doggett analysis. However, if the court does that... But you don't get to say, I don't think, you get to say, here's how we were prejudiced. But if you don't believe that, just presume that we were prejudiced and we win. Well, Your Honor, I think that it's more that we're saying there is not only this prejudice which we perceive and can describe, but in addition, as the Supreme Court and this court have recognized, there can be other forms of prejudice that cannot be demonstrated and that need to be presumed. I don't think that they are inconsistent. And that's why both were briefed in the district court. Can I ask you a question, ma'am? Sure. The prejudice you allege, or at least the main prejudice as I read it, is the fact that in between, that because of the delays, it allowed the state government to convict your client of additional crimes which then had an effect on the sentence that was imposed. Am I correct? Yes, that and the lost opportunity for concurrent time. I have difficulty with the idea that because he commits additional crimes, that that constitutes a prejudice as to the result of this case, which is not relevant conduct even. Can you help me with that? Well, I think that that's an understandable position. However, I think that if his sentence would have been different had the government acted in a timely manner, then he has been prejudiced. And I think that that's what happened here. Well, I don't quite understand what happened here, then. The delay was in what? The delay is between the time that he is found and the complaint is filed and the time that he is finally brought into Federal court. For what? For the 1326 violation. Between the time of the complaint and the trial? Yes. Although in this case, we are primarily counting just up until the date of his initial appearance as the period when the prejudice is solely the government's responsibility. And he was in prison at the time? Yes. That's correct. In State prison. Correct. Correct. And so if they had what's your, because they filed a detainer. Well, they didn't file a criminal detainer. Right. And so that's our problem, is that had the government filed a criminal detainer, then Mr. Gomez-Gutierrez would have been able to assert his right to a speedy trial under the Interstate Agreement on Detainers Act, because instead the government chose to rely on a civil ICE detainer. The government received the benefits of a detainer. He wasn't released. He was being held for this prosecution to be turned over to the Federal authorities. But he was not able to assert a speedy trial right. Counsel, may I ask you what the language is in Doggett that you're relying upon to support your argument that some unnamed prejudice should be presumed? Sure. Although to do a direct court, I'm going to have to get my notes. Because while you're going there, I was looking at the language on page 654 that describes in particular three types of harm, anxiety and concern of the accused, oppressive pretrial incarceration, and the possibility that the accused's defense will be impaired by dimming memories and loss of exculpatory evidence. Those are the three specific types of harm that the Supreme Court articulated in Doggett. So what language are you relying upon to support your argument that there is some other unnamed type of harm that should be presumed? I'm sorry. I'm not saying that there is an unnamed type of harm. I'm saying that a defendant may not be able to demonstrate how these forms of prejudice occur. So tell me the language, though, that you're relying upon. Should I? Yes, please. All right. So in Doggett ---- Give me a page, please. Okay. One moment. Page 655, where the Court says that excessive delay presumptively compromises the reliability of the trial in ways that cannot be proven or even identified. Right. But that's a specific. It penalizes the trial, right? Sure. So I thought you said that when you can't articulate a harm, then it should be presumed. So there is some requirement that you articulate how the trial is damaged, not just an amorphous harm. I'm not sure I'm saying anything different. I mean, I think that the idea is that we can't particularly articulate how the reliability was compromised. But certainly, I agree that the concern is whether the reliability was compromised. It's impairment of the defense. There has to be some link to the impairment of the defense under Doggett. But what Doggett says is that you can't expect the defendant to articulate what that link is. I don't think Doggett says that. Could I, if I could just ---- I'm looking at 655. I'm looking at that page here. We generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other Barker criteria, it is part of the mix. Sure. So that seems to conflict with your position that that presumption is unrebuttable. No, I don't think so, Your Honor, because, of course, that is just one factor. But the other factors, in this case, the district court found all were either favorable to the defendant or neutral. I think the government takes issue with that position. So you've exceeded your time. Judge Torreo, do you have any questions? I'll wait. Thank you. All right. Thank you. We'll hear from the government, and then we'll give you a minute for rebuttal. Thank you. Good morning, Your Honors. May it please the Court. Jonas Lerman for the United States. Your Honors, under this Court's precedent, this is a case about an 8-month delay. That's the period from the indictment to the initial appearance. The district court found that the government did not deliberately or strategically cause the delay, and under this Court's precedent, the sentencing prejudice claimed by the defense is not actual prejudice. Well, counsel, you've skipped over a source of controversy between the parties, whether or not we measure the time from the fouling of the complaint or from the time of indictment. And that was the next subject I was going to get to, Your Honor. So even if this Court assumes for the sake of argument that the delay does run from the date of the criminal complaint, and as we explain in our briefs, we think that would be contrary to biding precedent, but even if you ruled that way, the defense still loses, because under this Court's precedent, that's not long enough to merit the extreme remedy of dismissing the indictment. And the best case I would cite on that point is U.S. v. Gregory. There, there was a 22-month post-indictment delay. Here we have an 8-month post-indictment delay. And Gregory said that was not long enough to relieve the defendant from showing actual prejudice. And the Court also expressly rejected the types of sentencing prejudice claims that the defense is making here. And the reason was that this Court recognized that at sentencing, the district court will have a lot of tools at its disposal to adjust the sentence if the court determines that's appropriate. Ginsburg. So, counsel, your citation to Gregory incorporates your argument that the time period starts from the indictment, as opposed as from the complaint. So do you have a case to support your argument that the time period from the filing of the complaint to the initial appearance does not create the presumption? Yes. I would cite three cases. First, Marion. Fight me your strongest one. Favors v. Imon, which was this Court's first case interpreting Marion. So Marion came out from the Supreme Court in 1971. Favors comes out in 1972. Favors squarely addresses this question of whether a criminal complaint standing alone triggers the Sixth Amendment speedy trial right. This Court said it did not. That's the binding precedent on this Court. It's the first time this Court confronted that question after Marion. There are two subsequent decisions. That wasn't the question I asked you, though. The question I asked you was if we assume that the time begins to run from the time of the complaint, what is your best case that there is no presumption of prejudice? I'm sorry. So, again, I would point the Court to Gregory, because even if the time ran from complaint here, that would mean this was a total 25-month delay. In Gregory, it was a 22-month post-indictment delay. I don't know what the delay was pre- and post-indictment. It would have been more than 22 months, and this Court still found that that delay was not long enough to relieve the defendant from showing actual prejudice, and that he couldn't show prejudice based on the same sorts of theories that the defense has raised here. Now— Can I ask you a question? I'm sorry. Are you finished? Yes. Please go ahead, Judge Troya. Can you refresh my mind as to when was the defendant pre-trial incarcerated? In the state court? Well, whatever it was. So the timeline went like this. In January of 2013, the defendant was arrested by state police on state gun and drug charges. In February of 2013, about a month later, the U.S. filed a criminal complaint while he was in state pre-trial detention. In September of 2013, he was convicted and sentenced in state court. Then in July of 2014, the federal government indicted him. And then in March of 2015, a federal magistrate issued a writ to bring him over from state to federal custody, and then he made his initial appearance about a And then 11 months after his initial appearance, he moved for dismissal on these Sixth Amendment speedy trial grounds. If I could briefly address the interstate agreement on detainer's point that the defense raised. That does not apply until someone has been convicted, until someone is serving a state sentence. So this idea that the government had some obligation to writ him over before he was convicted in state court is not true. It's not true under the IAD, and it's not true under 18 U.S.C. 3161. So is it your position he was never convicted of a state crime? Oh, he was. He was convicted. Well, once he was convicted, then why wasn't there an IAD done? Because the government was not required to bring him over to state court until he was. I didn't ask what the government required. I was asking why. What was the rationale for not doing? Just because you didn't have to? Is that the reason? Well, there was no indictment yet, and we were not required to indict him any earlier than we did. Under this Court's precedent, we're not required to use a criminal detainer. We can use — I mean, ICE uses civil detainers, and we've cited that Ninth Circuit authority from the 1980s saying that the IAD does not confer substantive rights on defendants. What the government did here has never been held to be invalid. But the difference between an administrative detainer and a criminal detainer is what? So an administrative detainer does not give the defendant notice of charges pending against him. A criminal detainer does. But this Court has held that the government is not required to use a criminal detainer versus a civil detainer. And so the other alternative theory they have for why we should have brought him over sooner is 18 U.S.C. 3161J, part of the Speedy Trial Act. But that, too, doesn't attach until he's been convicted in state court and he's been indicted by the federal authorities. Do you ever use an IAD to hold state prisoners? In 1326 cases or? In 1326 cases. My understanding is that ICE does not use criminal detainers. So the 2009 case from the ---- So it would be ICE that filed the IAD and not the U.S. Attorney's Office? It would be ICE that filed the administrative detainer. Right. But if there were an IAD, who would file it? I'm not sure I understand. I mean, the IAD is the agreement between the States. It's a criminal detainer. But who would the State precipitate it or would the federal government precipitate an IAD? A criminal detainer? Yes. Who's responsible for initiating it? The federal government would be. Who in the federal government? The agency, whatever the law enforcement agency is. So the agency would coordinate with the State prosecutorial authorities? That's my understanding. I mean, we're getting outside the record, and this is not my area of expertise. This is a procedural matter that we're trying to clear up. So if it's not something your office would do, that's what I was trying to figure out. Would your office be involved in that? My understanding is that it's the law enforcement agencies that do that. I could be wrong. But I think the crucial point is what the defense is really arguing for here is a right to be indicted sooner than they were, and not just that, but a right to be indicted, convicted, and sentenced in federal court before being convicted in State court in a preexisting, totally unrelated case. And the Sixth Amendment just simply does not confer that right on the defendant. He doesn't — he's not entitled to dictate the order in which two separate sovereigns prosecute him. So this — And the whole detainer process is — would be contrary to that, I would think. Yes. Yes. And, you know, I think it's telling that, you know, the eight-month post-indictment delay is not really what the defense is complaining about here. They're complaining that we didn't convict him before the State convicted him in a preexisting case. But basically, he wanted his sentences to run concurrently. That was the main thrust of his argument. Yes, although he did not raise that argument when moving to dismiss the indictment. And I want to stress that point, because our position is that he's waived that argument for purposes of the Sixth Amendment claim. The only prejudice that he identified when moving to dismiss the indictment was this purported inflation of his criminal history score. Then at sentencing, he raised the concurrent sentence argument for the first time. But our position is that's not sufficient to preserve it for purposes of the Sixth Amendment claim. But in any event, under any standard of review, both theories are wrong under Gregory and this Court's other precedent. I also wanted to mention, you know, that the defense has relied on Shell, Doggett, and Mendoza for this idea that they're not required to show prejudice. What you didn't hear, though, is that each of those cases involved dramatically longer delays than we have here. So Shell, it was a five-year post-indictment delay. Doggett, it was an eight-and-a-half-year post-indictment delay. Mendoza, it was a ten-year post-indictment delay. And again, here we have an eight-month post-indictment delay. As for why Judge Davila used the term gross negligence rather than negligence, we don't think that has any sort of legal significance. But I think he may have used that term because he was under the mistaken belief that the government was required to indict sooner, maybe, or that the relevant period of delay here was 25 months rather than eight months. But in any event, the defense hasn't pointed to any case where any court has dismissed an indictment on facts like these here. So we would ask you to affirm. So the facts get a little confusing. The 25 months runs from the complaint. From the complaint to the initial appearance in federal court, yes. So it would be right, correct. Unless the Court has other questions. Did you want to briefly discuss the reasonableness of the sentence? Sure. The substantive reasonableness. Sure. Thank you, Your Honor. So the district court here used a lower guidelines range than the government or probation found, and then sentenced this defendant at the bottom end of that lowered guidelines range. This is a defendant with two prior deportations. Each time he has chosen to come back to this country and commit serious crimes. He's been a Norteno gang member his entire adult life.  The court was not required to vary or depart downward. Under Gregory, you know, recognize that district courts have broad discretion to adjust sentences as appropriate to account for delays. But importantly, this Court said in Gregory that the district court's decision to depart, quote, rests firmly within the district court's discretion. So the court wasn't required to impose a below-guidelines sentence here. And on this record, the court was well within its discretion to sentence within the guidelines. And I note that the defense hasn't made any procedural claim of, you know, any defect in the sentence. It's purely a substantive reasonableness claim. All right. Thank you, counsel. Thank you. Judge Torea, do you have any questions for the government? No. All right. Thank you, counsel. Thank you. Roboto, one minute. I'd like to just briefly address the process of issuing criminal versus administrative detainers. Until 2007, the San Jose Division of the United States Attorney's Office regularly issued criminal detainers. I thought that that was true, but counsel convinced me that my recollection was bad on that. And so what happened is, starting in 2007, they started relying instead on what were then INS detainers and later became ICE detainers. The responsibility to lodge a criminal detainer is with the Department of Justice. In the San Jose Division, they have chosen for whatever reason to decline to do that. It is true that they have the right to decline to lodge a criminal detainer. What we object to is their reliance on the civil ICE detainer, which serves the purpose of holding the defendant for Federal government. But that's why the district court judge made the determination that they were grossly negligent. Exactly. In this case. But that doesn't get you past the prejudice problem. Well, I think that the reason that's important for the prejudice problem is because the gross negligence means that a shorter delay is satisfactory to satisfy Doggett. All right. Thank you, counsel. Thank you. Thank you to both counsel.
judges: Torruella, Schroeder, Rawlinson